UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


HYMEL VARNADO (#333068)

VERSUS                                          CIVIL ACTION

KENNETH NORRIS, ET AL                           NUMBER 13-348-JWD-SCR



## NOTICE

Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.


ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, February 6, 2015.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


HYMEL VARNADO (#333068)

VERSUS                                          CIVIL ACTION

KENNETH NORRIS, ET AL                           NUMBER 13-348-JWD-SCR


**MAGISTRATE JUDGE'S REPORT**

Before the court are the defendants' Motion for Summary Judgment and the Plaintiff's Motion for Summary Judgment. Record document numbers 74 and 81, respectively.

For the reasons which follow, the defendants' Motion for Summary Judgment should be granted in part and the Plaintiff's Motion for Summary Judgment should be denied.


**Background**

Pro se plaintiff, an inmate at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed a Complaint Under the Civil Rights Act ("Complaint") pursuant to 42 U.S.C. § 1983 against Louisiana Department of Public Safety and Corrections Secretary James LeBlanc, LSP Warden N. Burl Cain, Asst. Wardens Kenneth Norris and Stephanie Lamartiniere, Dr. Jason Collins and Dr. Ramon Singh. Plaintiff alleged that the defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Warden Cain, Asst. Warden Norris, Asst. Warden Lamartiniere, Dr. Collins and Dr. Singh, copies of the plaintiff's medical records and copies of Administrative Remedy Procedure ("ARP") LSP-2013-0119.

Plaintiff moved for summary judgment[1] relying on a statement of undisputed facts, the affidavits of inmate Wayne Fritz, Gertie Varnado, Juan Matthews, Edward Giovanni, and Michael Zihlavsky, copies of a letter from inmate Michael Zihlavsky to Warden Cain dated February 21, 2012, Offender Posted Policy #006, an excerpt of Department Regulation No. B-06-001, Department of Public Safety and Corrections Services Health Care Manual including Health Care Policy Nos. HC-01, HC-02, HC-03, HC-05, HC-11,HC-13, HC-14, HC-15, HC-16, HC-19, HC-20, HC-26, HC-31, HC-32 and, HC-33, portions of the LSP Correctional Officer Training Program and the training transcripts of Warden Cain, Asst. Warden Lamartiniere, Asst. Warden Norris and Dr. Collins, the plaintiff's mental health and medical

---

[1] Plaintiff addressed claims in his motion for summary judgment which were not raised in the complaint, including but not limited to, claims that he was denied adequate pain medication and an appropriate medical duty status, the implementation of a "slow roll" policy, the implementation of a policy forcing inmates to lift heavy objects to clean their cells, the use of inadequately trained medical personnel, charging inmates improper co-payments for medical treatment, failing to prioritize consultation forms to outside medical facilities, improperly disclosed the plaintiff's medical information to another inmate, and threats of retaliation for seeking medical treatment and pursuing his lawsuit. Plaintiff's motion for summary judgment shall not be treated as an amendment to his complaint.

records, a list of hernia surgeries needed as of May 21, 2012, position descriptions and the results of ARP LSP-2013-0119.

## I. Factual Allegations

Plaintiff alleged that on September 30, 2009, he sought medical treatment for complaints of lower abdominal pain. Plaintiff alleged that on August 21, 2011, he sought medical treatment after a small lump in his abdomen. Plaintiff alleged that on November 11, 2011, he sent a letter to Medical Director Dr. Jonathan Roundtree requesting a medical duty status to limit his work requirements due to the protruding lump in his abdomen. Plaintiff alleged that he received no response.

Plaintiff alleged that on February 22, 2012, he experienced a "pop" in his abdomen while lifting a property locker box, he then began to experience pain and swelling in his abdomen. Plaintiff alleged that he was examined by Dr. Toce who diagnosed an indirect inguinal hernia. Plaintiff alleged that he was prescribed medication, a medical duty status and was referred to the surgery clinic.

Plaintiff alleged that since February 2012 he has made numerous sick call requests seeking medical treatment for his abdominal pain. Plaintiff alleged that on May 29, 2012, he sought sick call for complaints of a lump protruding from his abdomen which caused a burning sensation which radiated to his testicles and difficulty having a bowel movement.

Plaintiff alleged that in June 2012 he and several other inmates with hernias were summoned to a meeting at the R.E. Barrow, Jr. Treatment Center where prison officials, including Asst. Warden Norris and Dr. Collins, informed them that the Louisiana State University ("LSU") Surgery Clinic was responsible for performing necessary surgeries and, due to budgetary constraints, surgeries would not be performed unless the condition became life-threatening.

Plaintiff alleged that he filed an administrative grievance regarding the failure to provide necessary hernia surgery, and that prison officials responded to his administrative grievance advising him that the LSU Surgery Clinic is responsible for providing the necessary surgical hernia repair.

Plaintiff alleged that for more than two years after he was first diagnosed with an inguinal hernia he sent correspondence to prison officials complaining about his medical condition and the physical hardship the delay in providing the necessary surgery was causing him. Plaintiff alleged that he also informed medical personnel and prison officials about his abdominal and testicular pain, difficulty with bowel movements, mental health concerns and the general interference with his daily activities resulting from the failure to provide the necessary surgery to repair his hernia.

Plaintiff alleged he was told he required surgery but due to a lack of funding, the surgery would not be performed. Plaintiff

alleged that he was told only inmates with life-threatening conditions would be scheduled for surgery.

Plaintiff alleged that the defendants ignored his complaints of severe pain and denied him adequate medical treatment, and that the defendants adopted a policy of providing only minimal care to prisoners based upon cost.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). "[A] party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is genuine issue for trial.'" *Id*. at 324; *see* Fed.R.Civ.P. 56(c)(1). "If a party fails to properly support an assertion of fact ... as required by Rule 56(c), the court may [ ] ... grant summary judgment if the motion

and support materials - including the facts considered undisputed - show that the movant is entitled to it." Fed.R.Civ.P. 56(e)(3). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

### B. Rights of Other Prisoners

The right to bring an action under the civil rights act is personal in nature and may not be asserted by third parties. *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986). All persons who claim a deprivation of constitutional rights must prove some violation of their personal rights. *Id.* Insofar as the plaintiff's complaint can be read to assert a deliberate indifference claim on behalf of other prisoners, the claim is not a personal right which he may assert.

### C. Exhaustion of Administrative Remedies

Defendants argued that the plaintiff failed to exhaust available administrative remedies regarding his claims against Dr. Singh, Asst. Warden Norris and Asst. Warden Lamartiniere before filing suit.[2]    Specifically, the defendants argued that the

---

[2] In the introduction to Section IV of their supporting
(continued...)

plaintiff filed ARP LSP-2013-0119 complaining that he did not
receive adequate medical treatment and surgery for his hernia.
Defendants argued that the plaintiff did not alert prison officials
to any claim against Dr. Singh, Asst. Warden Norris and Asst.
Warden Lamartiniere.

Section 1997e of Title 42 of the United States Code provides
in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action
> shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by
> a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies
> as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available
administrative remedies before filing a § 1983 suit and is
precluded from filing suit while the administrative complaint is
pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002);
*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated
in part* by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007)
(abrogating the holding that a district court may dismiss a civil

---

[2](...continued)
memorandum the defendants argued that the plaintiff failed to
exhaust available administrative remedies against Dr. Singh.
Record document number 74-2, p. 21. However, in Section V, the
defendants argued that the plaintiff failed to exhaust available
administrative remedies against defendants Asst. Warden Norris and
Asst. Warden Lamartiniere. *Id.* at 27. For purposes of this
report, the court will presume that the defendants argued the
plaintiff failed to exhaust available administrative remedies
regarding his medical indifference claims against Dr. Singh, Asst.
Warden Norris and Asst. Warden Lamartiniere.

complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *Id.*, 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

Under the Fifth Circuit's strict approach to the Prison Litigation Reform Act's exhaustion requirement, mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

The Prison Litigation Reform Act ("PLRA") does not specify who must be named in a prison grievance in order to properly exhaust the prison grievance system. *Jones v. Bock*, 549 U.S. 199, 217-218,

127 S.Ct. 910, 922-23 (2007). Instead, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 923.

The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). A grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id.*

Plaintiff alleged that he filed ARP LSP-2013-0119 regarding the claims raised in the Complaint.[3] The summary judgment evidence showed that the plaintiff filed ARP LSP-2013-0119 on January 7, 2013, complaining that he was told he needed surgery to repair a hernia, but after more than one-and-one half years later the necessary surgery had not been provided.[4] On February 8, 2013, the

---

[3] Record document number 1, p.3, ¶ I.C.1.

[4] Record document number 74-7, pp. 17-18. The ARP stated, in relevant part, as follows:

> Dear Warden Cain, I'm writing concerning a on going medical problem I've been dealing with for the past year and a half. It has been well documented in my medical records that I have a hernia and have seen sickcall on numerous occasions. I've spoken to doctor after doctor including the warden over health care services Kenneth Norris. I've been given several different temporary duty status, pain medication, and have been scheduled for surgery well over a year now. My problem has gotten worst & worst by the day and the pain is to the point
> (continued...)

First Step Response was issued.[5]  The response was prepared by L. Lofton for Asst. Warden Lamartiniere.[6]  The First Step Response noted that the plaintiff's medical records indicated that he had received medical care on a regular basis and that he was awaiting a surgical consultation.[7]  Plaintiff was further advised that the LSU Surgery Clinic is responsible for scheduling the referral and surgery.[8]

The summary judgment evidence showed that the plaintiff clearly placed prison officials on notice of his claim that he was denied adequate medical treatment and surgery for his hernia.

As noted above, the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.  However, a grievance must provide administrators with a fair opportunity under the

---

[4](...continued)
where I'm unable to cough, sneeze, walk, or even blow my nose without suffering severe pain.  I'm having problems using the bathroom and I'm unable to stop my intestine from bulging out and falling into my testicles.  This hernia significantly affects my daily activities, to be in pain while awaiting a delayed operation constitutes deliberate indifference which is a violation of my Eighth Amendment right.  I bring this matter to your attention in hopes of avoiding litigation.  I request to be treated for his hernia now.

[5] Record document number 1, p. 9.

[6] *Id.*

[7] *Id.*

[8] *Id.*

circumstances to address the problem that will later form the basis of the suit.  To the extent the plaintiff alleged in his Complaint that each defendant was deliberately indifferent to his serious medical needs for failure to provide adequate medical treatment and surgery for his hernia, the plaintiff's ARP provided prison officials with a fair opportunity to address his deliberate medical indifference claim.   As to any other claim alleged in his Complaint, the summary judgment evidence showed that the plaintiff failed to exhaust available administrative remedies regarding any other claim.

The summary judgment evidence supports finding that the plaintiff exhausted his deliberate medical indifference claim based on the failure to timely provide him with hernia surgery, but the plaintiff failed to exhaust available administrative remedies regarding any other claim asserted in his Complaint prior to filing suit, as required by 42 U.S.C. § 1997e(a).

**D. Official Capacity**

Defendants argued that they are entitled to Eleventh Amendment immunity insofar as the plaintiff sued them in their official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al,* _ 502 U.S. 21, 112 S.Ct. 358 (1991).  A suit against a state official in his official capacity is treated as a suit against the state.

11

*Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985).  Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's 'policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law.  A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a section 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device."  Officers sued in their personal capacity come to court as individuals.  A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14.

Thus, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual

capacities for actions taken by them under color of state law which caused the deprivation of constitutional rights. Additionally, because the plaintiff sought prospective injunctive relief his claim against the defendants in their official capacity is also actionable under § 1983. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief, whether in the form of damages or prospective injunctive relief.

### E. Deliberate Medical Indifference Claim

Plaintiff alleged that the defendants were deliberately indifferent to his serious medical needs. Specifically, the plaintiff alleged that he was diagnosed with a hernia and was advised that he required surgery but he was denied the hernia surgery due to a lack of funds. Plaintiff alleged that his condition has worsened and his causes him unnecessary pain and suffering.

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment he felt he should have is not the issue. *Estelle v. Gamble*, *supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Unsuccessful medical treatment does not provide a basis for a civil action under 42 U.S.C. § 1983 for violation of a constitutional right. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation. *Varnado, supra*.

To be liable under § 1983 a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983). Plaintiff's allegations that the defendants are responsible for the actions of their subordinates is insufficient to state a claim under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials

implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), *cert. denied*, 480 U.S. 917, 107 S.Ct. 1369 (1987) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2037 (1978)). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn v. Manuel*, 773 F.2d 605, 609, 610 (5th Cir. 1985) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427 (1985)).

Plaintiff's medical records showed the following. On February 22, 2012, the plaintiff completed a Health Care Request Form seeking emergency medical treatment for complaints of abdominal pain and a large knot protruding from his lower abdomen.[9] Plaintiff was examined by Dr. Toce who diagnosed the plaintiff with a right indirect inguinal hernia with pain radiating to right testicle.[10] Plaintiff was referred to the Surgical Clinic for a consultation.[11]

On February 28, 2012, the plaintiff completed a Health Care Request Form seeking routine sick call for complaints of pain in

---

[9] Record document number 74-3, p. 67.

[10] *Id.* at 66.

[11] *Id.*

his groin and right testicle.[12]  Plaintiff was issued a medical duty status providing the plaintiff bed rest for three days.[13]

On March 19, 2012, the plaintiff was examined at the Physician's Clinic of the R.E. Barrow, Jr. Treatment Center for his hernia.[14]  Plaintiff was issued a medical duty status restricting prolonged walking, prolonged standing, and other recreational activities.[15]

Plaintiff sought sick call for complaints of pain associated with his hernia on April 5[16], May 10[17] and May 29, 2012.[18]  On July 9, 2012, the plaintiff was referred to the LSU Health System General Surgery for a consultation regarding acute right indirect inguinal hernia with pain radiating to right testicle.[19]  On July 24, 2012, the plaintiff was examined at the Physician's Clinic for a followup examination regarding his hernia.[20]  A notation in the plaintiff's medical chart indicated that he was awaiting a surgical

---

[12] *Id.* at 63.

[13] *Id.*

[14] *Id.* at 61.

[15] *Id.*

[16] *Id.* at 60.

[17] *Id.* at 56–57.

[18] *Id.* at 55.

[19] *Id.* at 51.

[20] *Id.* at 50.

consultation.[21]

On January 16, 2013, the plaintiff sought sick call for complaints of abdominal pain, nausea, difficulty with bowel movements, and that the lump in his abdomen had enlarged.[22] Plaintiff was prescribed Metamucil®.[23]

On February 5, 2013, the plaintiff was examined at the Physician's Clinic for complaints of hernia pain and constipation.[24] Plaintiff was prescribed medication and was referred to the LSU Health System Surgical Telemedicine.[25]

Plaintiff sought sick call for complaints of pain associated with his hernia on March 5,[26] March 14,[27] and March 19, 2013.[28]  On March 20, 2013, the plaintiff was examined at the Physician's Clinic for a followup examination regarding his hernia.[29]  Plaintiff

---

[21] *Id.*

[22] *Id.* at 46.

[23] *Id.*

[24] *Id.* at 42.

[25] *Id.* at 41-42.

[26] *Id.* at 40.

[27] *Id.* at 39.

[28] *Id.* at 38.

[29] *Id.* at 37.

was ordered a hernia belt.[30]

Plaintiff sought sick call for complaints of hernia pain on March 28,[31] April 1,[32] April 5,[33] and May 27, 2013.[34] On July 3, 2013, the plaintiff was examined for a possible incarcerated hernia.[35] Plaintiff was in obvious discomfort and the herniation was obvious.[36] The hernia was reduced with minimal difficulty.[37] On July 8, 2013, the plaintiff was examined at the Physician's Clinic for a followup examination of his hernia.[38] On August 16, 2013, the plaintiff was seen at the prison emergency room for complaints of hernia pain.[39] Attempts to reduce the hernia was unsuccessful.[40] Plaintiff returned to the emergency room the next

---

[30] *Id.*

[31] *Id.* at 35.

[32] *Id.* at 34.

[33] *Id.* at 33.

[34] *Id.* at 30.

[35] *Id.* at 23.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 22.

[39] *Id.* at 19.

[40] *Id.*

day at which time the reduction was successful.[41]  On August 25, 2013, the plaintiff required another reduction of his hernia.[42]

Plaintiff again sought medical treatment for pain and complications associated with his hernia on August 28[43] and October 21, 2013,[44] and  January 12, 2014.[45]

All of the summary judgment evidence has been considered. Even though there may be many facts that are not genuinely disputed, on summary judgment the court must draw all reasonable inference from both the disputed and undisputed facts in favor of the party opposing summary judgment.  Drawing all reasonable inferences in favor of the plaintiff, as the party opposing the defendants' summary judgment motion, the summary judgment evidence is sufficient for a reasonable jury to find that the defendants were deliberately indifferent to the plaintiff's serious need for hernia surgery.  There is no evidence that any defendant or outside consultant affirmatively determined that the plaintiff did not need surgery to repair his hernia.  Defendants knew that the state's charity hospital had been closed, resulting in a backlog for

---

[41] *Id.*

[42] *Id.* at 15.

[43] *Id.* at 13.

[44] *Id.* at 11.

[45] *Id.* at 9.

patients needing hernia operations.[46]  A reasonable jury could find
that the procedure officially approved by the Louisiana Department
of Public Safety and Corrections, and therefore applied at LSP, for
obtaining medically needed surgery would result in lengthy delays
– well more than a year in this case - during which the plaintiff
would continue to experience ongoing, significant pain, and could
further find that medically necessary surgeries would not be
performed until the condition became a life-threatening emergency.
Therefore, a reasonable jury could find that the defendants were
deliberately indifferent to the plaintiff's serious medical needs.

For essentially the same reasons, the plaintiff's summary
judgment motion should also be denied.  Viewing all of the summary
judgment evidence in the light most favorable to the defendants,
the parties opposing the plaintiff's summary judgment motion, a
reasonable jury could find that the defendants provided reasonably
prompt and appropriate medical evaluation and treatment for the
plaintiff's hernia condition.  There is no evidence any defendant
actually denied the plaintiff hernia surgery due to LSP budget
constraints.

**F. Supplemental Jurisdiction**

Plaintiff sought to invoke the supplemental jurisdiction of

_____

[46] See record document number 74-5, Affidavit of Asst. Warden
Norris, ¶¶ 5, 7.

this court.  District courts may decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of State law; the claim substantially predominates over the claims over which the district court has original jurisdiction; if the district court has dismissed all claims over which it had original jurisdiction; or for other compelling reasons.  28 U.S.C. § 1367.  Plaintiff's allegations of deficient and unsuccessful medical care amount to state law negligence or medical malpractice claims.  The court should decline to exercise supplemental jurisdiction over such state law claims.

## RECOMMENDATION

It is the recommendation of the magistrate judge that:

(1) the defendants' Motion for Summary Judgment be granted in part, dismissing any claim made on behalf of other prisoners and any other claim asserted in his Complaint except for his deliberate medical indifference claim against the defendants based on the failure to timely provide him with hernia surgery, and denying the remainder of the defendants' motion;

(2) the Plaintiff's Motion for Summary Judgment be denied;

(3) the court decline to exercise supplemental jurisdiction over any state law claims and these claims be dismissed without prejudice; and,

(4) this action be referred back to the magistrate judge for

further proceedings on the plaintiff's Eighth Amendment deliberate medical indifference claim.

Baton Rouge, Louisiana, February 6, 2015.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE